UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL TROMETTER,

        Plaintiff,

v.                                              Case No.  1:12-CV-333

THIRD PARTY INTERNATIONAL             HON. GORDON J. QUIST
INCORPORATED

        Defendant.

_____/

## OPINION DENYING MOTION TO TRANSFER VENUE

On April 5, 2012, Plaintiff, Michael Trometter, filed a Complaint against Defendant, Third

Party International Incorporated (TPI).  Trometter consulted for TPI out of his home office in

Vicksburg, Michigan, and TPI maintained its headquarters in Florida.  The parties sustained the

relationship by communicating through email, telephone, and mail.  On June 8, 2012, TPI filed a

Motion to Transfer Venue (docket no. 4) to the Middle District of Florida, pursuant to 28 U.S.C. §

1404(a), which permits a transfer for the convenience of parties and witnesses.  TPI is located in the

Middle District of Florida.

The Court does not find that oral argument would be helpful.  Because transferring the

litigation to Florida would, for the most part, merely shift the inconvenience to Trometter and

because more factors weigh in favor of not transferring the litigation, TPI's motion will be denied.

## I. BACKGROUND[1]

TPI, owned by Bret Barnes, is a Florida company with its principal place of business in

Ocala, Florida.  TPI's clients are primarily companies in the aerospace industry.  TPI's consultants,

---

[1] The background is supported by declarations and exhibits attached to the motion and response.  The parties appear to dispute some facts, but none of the disputed facts are material to the disposition of the instant motion.

like Trometter, act as liaisons between TPI's clients and the clients' suppliers.  TPI's clients pay TPI for services by the hour; TPI, in turn, compensates its consultants at a lower hourly rate.  Consultants can also receive commissions for certain work.

In December 2004, discussions began between Trometter and TPI when Barnes met with Trometter in Michigan.  TPI eventually sent a proposed agreement to Trometter in Michigan, where Trometter signed and returned the agreement to TPI via U.S. mail.

From January 2005, through April 2010, Trometter worked both as a consultant and as a sales representative for TPI.  As a sales representative, Trometter solicited and procured new clients for TPI and also helped manage other TPI consultants.

Trometter's relationship with TPI was initially governed by a written Non-Compete and Subcontractor Consultant Agreement (the "Agreement"). (Docket no. 5-2.) For consulting services, Trometter received $40 per hour and reimbursement of certain expenses.  The Agreement also included a "sales commission" for Trometter of 40% for new contracts that were a "direct result of his efforts."  In addition, the Agreement contained a non-compete provision which prohibited Trometter from competing with TPI for a period of five years after his separation from TPI.  The parties operated under this contract until February 2008.

In February 2008, the parties amended the Agreement.  The amendment changed the percentage of profits Trometter received from different categories of customers, such as existing versus new customers.  In March 2009, because TPI hired a new Director of Operations, Wayne Hobbs, the parties again amended the Agreement to change the profit split on accounts.  On April 13, 2010, Trometter terminated the Agreement with TPI.  (*See* docket no. 5-4.)

In November 2010, Trometter resumed providing services for TPI.  According to TPI, Trometter's wife contacted Barnes and asked if Barnes would consider rehiring Trometter.  (Def.'s

2

Br. Ex. A, Barnes Affidavit ¶ 9.)  Barnes and Trometter met in Florida and eventually worked out an agreement for Trometter to once again perform services for TPI.  (*Id.*)  From November 2010 through April 2012, Trometter provided consulting services for one particular client, Pratt & Whitney Canada (PWC), for $50 per hour.

In March 2012, PWC requested a $10 per hour reduction in consulting fees for Trometter's services.  TPI states that it did not reduce the price because Trometter refused a reduction.  PWC's and TPI's relationship ended after all of the parties involved could not reach a mutually agreeable price.

The next month, in April 2012, the relationship between TPI and Trometter ended.  Even so, Trometter thought that he could still provide consulting services to PWC because of his experience working with PWC.  Trometter learned, however, that Barnes had informed PWC that Trometter was subject to a non-compete agreement.  According to Trometter, Barnes threatened PWC with legal action if PWC continued a relationship with Trometter.  Trometter thought that the parties agreed that the non-competition provision of the Agreement would not be enforced beyond April 16, 2012.

Throughout his time working for TPI, Trometter worked from his home office in Vicksburg, Michigan.  Trometter's work required extensive travel to multiple locations in Michigan, as well as other states and countries.  Trometter alleges that he successfully procured business from the following clients, which are the subject of this dispute: PWC, located in Montreal, Quebec; Sikorsky Aerospace, located in Stratford, Connecticut; and, Gulfstream Aerospace, located in Savannah, Georgia.  Although PWC is located in Montreal, Trometter performed consulting work for PWC in Michigan and several other locations in the United States.  Trometter states that he frequently

communicated and met with PWC personnel and its suppliers in Michigan. Trometter also had several other business contacts in Michigan.

Trometter's Amended Complaint alleges three counts: Count I (breach of contract) alleges that Trometter was not paid compensation pursuant to the Agreement; Count II seeks a declaratory judgment that Trometter is entitled to certain commissions from particular sales and that the non-competition provision in the Agreement is no longer enforceable; Count III (tortious interference with a business expectancy or relationship) alleges that TPI tortiously interfered with Trometter's business relationship with PWC.

## II. ANALYSIS

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a).[2] On a motion to transfer under § 1404(a), the moving party bears the burden of proving why a court should transfer the action. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995). "In ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006) (alteration omitted). "District courts have wide discretion to transfer an action under 28 U.S.C. § 1404(a) in order to prevent waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Helder v. Hitachi Power Tools, Ltd.*, 764 F. Supp. 93, 95-96 (E.D. Mich. 1991).

---

[2] The parties do not dispute that this lawsuit could have been brought in the Middle District of Florida, the district to which TPI seeks transfer.

The factors relevant in ruling on a motion to transfer venue include:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Perceptron, Inc. v. Silicon Video, Inc.*, 423 F. Supp. 2d 722, 729 (E.D. Mich. 2006).

"[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). "[T]ransfer is not proper if the result is simply to shift the inconvenience from one party to another." *Cincinnati Ins. Co. v. O'Leary Paint Co.*, 676 F. Supp. 2d 623, 630 (W.D. Mich. 2009) (quotation omitted).

### A.    The Factors

#### 1.    The Convenience of Witnesses

For this factor, "[t]he focus on this point is a qualitative, not a quantitative one and clearly is dependent on the factual and legal context of the particular case." Wright, Miller & Cooper, 15 Federal Practice & Procedure Jurisdiction § 3851 (3d ed. 2012). TPI anticipates calling Mr. Barnes and three other witnesses, all of whom reside in Florida. (*See* Def.'s Mot. Ex. A ¶¶ 13-16.) TPI's witnesses all have worked or work for TPI and, in general, will provide information regarding Trometter's pay arrangement and other information related to the relationship between Trometter and TPI. Trometter intends to call his wife and himself, who reside in Vicksburg, Michigan, which is in the Western District of Michigan. In addition, Trometter, without naming his witnesses, says that he has witnesses in Quebec, Canada, and Georgia. Trometter's witnesses allegedly will provide testimony regarding Trometter's efforts to procure business for TPI, the payments made to TPI upon

which Trometter believes he is entitled to commissions, and also TPI's alleged interference with Trometter's relationship or expectancy with PWC.

As the parties currently conceive their cases, more non-party witnesses are located in the Middle District of Florida. In addition, one of Trometter's witnesses is located in Georgia, which is much closer to the Middle District of Florida. While the convenience of witnesses is the most important in determining whether to transfer venue, this factor does not weigh heavily in favor of TPI because Trometter also has several witnesses who would be less inconvenienced if the litigation occurred in the Western District of Michigan. In addition, testimony is often presented by video or deposition. Moreover, much of the important evidence probably will be documentary, as opposed to non-party testimony. Finally, the parties suggest that the most important testimony will come from Trometter and Barnes, which does not favor transfer either way.

Therefore, this factor weighs slightly in favor of transfer.

### 2. The Location of Documents and Ease of Access to Sources of Proof

Given the widespread use of electronic document production, this factor should be given little, if any, weight. *See Cincinnati Ins.,* 676 F. Supp. 2d at 635. Document production and access to sources of proof are not issues in this case, exhibited by the parties' use of documents and citations thereto using the Electronic Filing System. This factor does not favor either party.

### 3. The Convenience of the Parties

This factor does not favor either party. It is probably just as inconvenient for TPI to litigate in Michigan as it is for Trometter to litigate in Florida. *See Cincinnati Ins.*, 676 F. Supp. 2d at 630.

### 4. The Locus of Operative Facts

TPI, while acknowledging that Trometter performed work in Michigan, argues that the operative facts occurred outside of Michigan, but does not argue that operative facts occurred in Florida.

This factors weighs against transfer. The business relationship between Trometter and TPI originated from discussions that occurred in Michigan. Trometter signed the first agreement between the parties in Michigan. Trometter conducted his work for TPI from his home office in Vicksburg, Michigan. Trometter contends that, while working on behalf of TPI, he had several business contacts in Michigan, but none in Florida. Also, some of Trometter's Michigan business contacts were suppliers for PWC.

### 5. The Availability of Process to Compel Unwilling Witnesses

All of TPI's non-party witnesses reside in Florida and, thus, Michigan courts do not have subpoena power to compel their attendance. Fed. R. Civ. P. 45(b)(2). Trometter points out that none of his witnesses could be compelled to appear in Florida. Of course, there is no indication that any of these witnesses would be unwilling to testify. In addition, the two key witnesses in the case will likely be Trometter and Barnes, both of whom would appear and testify in either Florida or Michigan. Also, written communications and agreements between the parties and witnesses will be important pieces of evidence. In sum, transferring venue would only shift the burden of cost to Trometter to compel his witnesses to testify in Florida. This factor does not weigh in favor of either party because, again, shifting the expenses and inconvenience from one party to the other is not an appropriate reason to transfer venue. *See Cincinnati Ins.*, 676 F. Supp. 2d at 630.

### 6. The Relative Means of the Parties

TPI asserts that Trometter is a "well-educated business man" to whom TPI paid "over $580,000 in consulting fees and $450,000 in other compensation" since 2006. (Def.'s Mot. at 9.) Moreover, TPI states that it has downsized since Trometter's departure. Trometter states that TPI is an "international consulting company with numerous employees." (Pl.'s Resp. at 15.) In addition, Trometter notes that he lost a major source of income when his business relationship with TPI ended. (*Id.*)

This factor does not strongly favor either party.  If anything, this factor favors Trometter. He is merely an individual, while TPI is a functioning business with numerous employees.  *See Moses v. Bus. Card. Express, Inc.*, 929 F.2d 1131, 1138 (6th Cir. 1991).  Even though Trometter received substantial compensation for his work with TPI, Trometter never received more than half of the gross profits – i.e., TPI always received more of the gross profits than Trometter.  Therefore, this factor, if it weighs in favor of either party at all, favors Trometter.

### 7.     The Forum's Familiarity With Governing Law

Where the question of state law is not complex, this factor should be given little or no weight.  *See Steelcase, Inc. v. Mar-Mol Co.*, 210 F. Supp. 2d 920, 941 (W.D. Mich. 2002) (citing *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992) (finding that the relative simplicity of common law fraud and breach of contract claims under Florida law were not a significant concern in the transfer analysis)).  The Court has not yet determined which state's law will govern Trometter's claims for breach of contract, declaratory judgment, and tortious interference with a business expectancy or relationship.[3]  Even if Florida law governs, instead of Michigan law, the simplicity of Trometter's claims makes this factor insignificant.  Thus, the Court will give this factor no weight.

### 8.     Plaintiff's Choice of Forum

"[A] plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum."  *Piper Aircraft*, 454 U.S. at 255 (citation omitted).  The Western District of Michigan is Trometter's home forum and, therefore, he is entitled to a strong presumption – even greater than had he filed elsewhere – in favor of this district.  This factor heavily weighs in favor of Trometter.

---

[3] The parties appear to dispute which law applies – Trometter says Michigan law, and TPI says Florida law.

### 9. Trial Efficiency and the Interests of Justice

TPI has not put forth evidence that this Court has a comparatively crowded docket or that it could not otherwise efficiently handle this case in the interests of justice. According to the 2011 Federal Court Management Statistics published by the Administrative Office of the United States Courts, for the twelve-month period ending September 30, 2011, the judges in this district had an average of 441 cases pending, while the judges in the Middle District of Florida had 1,131 cases pending – almost triple. The median time from filing to disposition of civil cases in this district is also shorter, 6.2 months, as opposed to 9.5 months for the Middle District of Florida. The median time from filing to trial for civil cases, however, in the Middle District of Florida was shorter, 22.1 months, than a median time of 28.6 months in this district. Last, only 3.1% of this district's cases were over three years old, while 57.5% of the Middle District of Florida's cases were over three years old. While this Court does not give the raw figures much weight, *see Steelcase*, 210 F. Supp. 2d at 941, this factor weighs against transfer because the figures suggest that the case will likely be resolved sooner in this district. Therefore, this factor slightly tips the scale in favor of Trometter.

### B. Balancing the Transfer Factors

Considering all of the factors, the scale is not tipped in favor of transferring the case.[4] To begin, Trometter's choice of forum, the forum in which he is located, is entitled to substantial weight. The convenience of non-party witnesses is the only factor that carries any weight in favor of transfer. In addition to Trometter's choice of forum, the locus of operative facts, the relative means of the parties, and trial efficiency and interests of justice all weigh against transfer.

In effect, this case deals with two parties who had a remote relationship: one in Michigan and one in Florida. The parties transacted business and communicated with each other using the

---

[4] When analyzing the factors, the parties do not differentiate between particular claims. Likewise, this Court finds no meaningful distinction between the factors when considering the claims separately.

telephone, mail, and internet.  All of the documents, and some of the communications, that the parties used can be produced in electronic form.  Granting TPI's motion would simply result in shifting the inconvenience from one party to another.  Therefore, TPI's motion to transfer venue will be denied.

       A separate Order will issue.


Dated:  July 9, 2012                                      _____/s/ Gordon J. Quist_____
                                           GORDON J. QUIST
                                    UNITED STATES DISTRICT JUDGE